UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JERIAH SELLERS,** : | |
|     **Plaintiff,** : | |
| : | |
| v. : | Case No._____ |
| : | |
| **HERSHEY ENTERTAINMENT &** : | |
| **RESORTS COMPANY, d/b/a** : | |
| **MELTSPA BY HERSHEY,** : | |
|     **Defendant.** : | |

**JURY TRIAL DEMANDED**

# COMPLAINT

AND NOW, comes Plaintiff, Jeriah Sellers, by and through her attorneys, Law Office of Andrew H. Shaw, P.C., and file this Complaint, and in support thereof avers the following:

## INTRODUCTION

1. Plaintiff Jeriah Sellers asked for and received a religious accommodation from her supervisor so that she would not have to escort a biologically male guest into the women's locker room. Defendant's manager also confirmed that accommodation was reasonable. Later, Defendant Hershey Entertainment and Resorts' corporate HR representative punished her for asking for and accepting this accommodation, telling her to keep her religion at home.

1

Defendant also refused any future accommodation, even though it would not create an undue hardship on Defendant. In doing so, her employer discriminated and retaliated against her on the basis of religion and failed to accommodate Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and the Pennsylvania Human Relations Act, 43 P.S. § 955.

## JURISDICTION AND VENUE

2. Jurisdiction is proper for Plaintiff's claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended ("Title VII"), and 28 U.S.C. § 1331; and as to Plaintiff's state law claims under Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.*, supplemental jurisdiction is conferred pursuant to 28 U.S.C. § 1367.

3. Venue is proper in the Middle District of Pennsylvania pursuant to 42 U.S.C. § 2000e *et seq.* and pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to Plaintiff's claims all occurred in Dauphin County, Pennsylvania.

4. This Court may grant Plaintiff's prayer for damages under Fed. R. Civ. P. 54 and her prayer for costs and expenses, including reasonable attorneys' fees and costs, under 42 U.S.C. §2000e, *et seq.*

5. Plaintiff has exhausted her administrative remedies and is entitled to bring this action. All conditions precedent to filing claims under Title VII have been performed or occurred.

6. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), dual filed with the Pennsylvania Human Relations Commission ("PHRC"), on July 21, 2025.

7. The EEOC issued Plaintiff a Notice of Right to Sue on July 23, 2025, which Plaintiff received on or about that same date, a copy of which is attached as Exhibit "A." This Complaint has been timely filed within 90 days of Plaintiff receiving her Right to Sue letter.

## PARTIES

8. Plaintiff Jeriah Sellers (hereinafter "Plaintiff" or "Jeriah") is an adult individual residing in Pennsylvania.

9. Plaintiff is a Christian.

10. The Defendant Hershey Entertainment and Resorts (hereinafter "Defendant") is a Pennsylvania corporation organized under the laws of the Commonwealth of Pennsylvania with a principal place of business at 27 West Chocolate Avenue, Hershey, Pennsylvania. Defendant does business as MeltSpa by Hershey ("MeltSpa"), with a principal place of business at 11 East Chocolate Avenue, Hershey, Pennsylvania, providing salon and spa treatment services.

3

11. Defendant is an "employer" within the meaning of Title VII because it has "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b).

12. At all relevant times hereto, Defendant was Plaintiff's employer.

13. Under the theory of *respondeat superior*, Defendant is liable to Plaintiff for the unlawful actions and inactions of its servants, agents and employees.

## FACTUAL ALLEGATIONS

14. Plaintiff, Jeriah Sellers, began working for Defendant in August of 2023 as a part-time concierge at MeltSpa.

15. As a concierge, Plaintiff is expected to escort guests back to either the door of the male locker room or within the female locker room, where the guest may change prior to their scheduled treatment.

16. When taking a guest to the female locker room, Plaintiff is expected to show the guest around the inside of the facility, making them aware of all amenities.

17. When taking a guest to the male locker room, she is not required to enter the facility, but verbally explains the amenities to clients on the way to the locker room.

18. On May 28, 2025, shortly after Jeriah clocked in for work, her direct supervisor pulled Plaintiff aside to ask her about a guest who was scheduled

4

to arrive that day. The supervisor asked Plaintiff if she knew the guest and reminded her that the guest is a male who identifies as a woman and is a well-known political figure.

19. The supervisor asked Jeriah to escort the male guest to the Women's Locker Room when the guest arrived.

20. Plaintiff would then be expected to take the guest into the Women's Locker Room and show the guest around, familiarizing the guest with all of the amenities, even if a female guest was using the space.

21. Jeriah was uncomfortable with this directive because it violated her religious beliefs.

### The Availability of Reasonable Accommodations and Plaintiff's Willingness to Comply with Those Measures

22. A few minutes after the supervisor's question, Jeriah went back to her supervisor to let her supervisor know that she was not comfortable with what she was being asked to do, which was to escort a biological male into a designated female locker room facility where other women as young as 13 could be changing.

23. Jeriah was relieved when her supervisor said it was no problem and that the supervisor would simply escort the guest to the facility instead.

24. At the MeltSpa, in addition to the manager, there are always two concierges and sometimes three on duty at a given time.

25. At no point that evening did Jeriah have any interaction with the male guest, but she was at all times willing to serve the guest as needed.

26. On May 31, 2025, during Jeriah's next-scheduled shift, the MeltSpa manager met with Jeriah to discuss the accommodation provided by her supervisor on May 28th.

27. Jeriah explained she wanted to be as deferential as possible to the supervisor to come up with what the supervisor thought was best, short of violating her Christian beliefs.

28. Plaintiff explained that as a Christian, she wanted to figure out how best to respond to this situation in a positive way for everyone, but that she was not comfortable escorting a biological male into the Women's Locker Room because it went against her religious beliefs, which also included her concern for other female guests who may be uncomfortable having a biological male present in the designated female locker room facility.

29. Jeriah explained that she treats all male guests well, no matter how they identify.

30. Plaintiff was more than happy to help any male with any aspect of their visit; Plaintiff's accommodation request was limited only to escorting the male

6

guest to and into the Women's Locker Room, and she was *not* objecting to serving or escorting this guest or any other male guest generally to other areas of the Spa.

31. The MeltSpa manager then suggested to Jeriah that when she could not escort a guest, a co-worker or manager could assume that task and escort that guest.

32. This is often done at the MeltSpa when one person covers for another if there is a phone call, they are doing another task like folding towels, or during a need to use the restroom.

33. Jeriah understood this to be an accommodation for her religious beliefs, and she responded to her manager that she was agreeable to this accommodation.

34. The MeltSpa manager stated to Plaintiff that she believed this accommodation should work, but she would have to run it by the Defendant's human resources department for approval.

35. Both Plaintiff's supervisor and manager recognized in these conversations that the Plaintiff's religious objection could be easily accommodated because that is how they handle it in a variety of other circumstances.

36. However, on June 4, 2025, shortly after clocking in for her shift, Plaintiff's manager brought her into the manager's office to meet with a representative from Defendant's human resources department.

7

37. During this meeting, Plaintiff was told that she violated the Defendant's Transgender Policy and that she would be disciplined in two ways. She would receive a write-up and would be suspended from her scheduled shift that day without pay.

38. Defendant's HR representative then stated to Jeriah: "Hershey wants you to leave your personal, religious, and political beliefs at the door."

39. It was at this point that Defendant's HR representative handed Jeriah a copy of the Defendant's "Spa Transgender Practices" for the first time, which she did not even know existed. A copy of the "Spa Transgender Practices" policy is attached as Exhibit "B".

40. Plaintiff was then told that she should review the guest's questionnaire and then escort the guest to the locker room according to whatever the guest marked on the questionnaire, which gave options for "Female," "Male," or "Non-Binary."

41. Defendant never notified Plaintiff of such a policy until the meeting with HR on June 4, 2025.

42. Defendant's HR representative also handed Jeriah a copy of the Personnel Action Memorandum (PAM) and informed Jeriah that she needed to sign off on the form. A copy of the PAM is attached as Exhibit "C".

43. Jeriah declined to sign since she had not "refused to assist a guest based on gender identity" as the document falsely stated, and because she had exhibited professionalism and civility in the matter.

44. Jeriah had never seen a copy of the Transgender Policy until that day and also advised Defendant's HR representative of this fact.

45. Plaintiff was nevertheless suspended from work and written up; the Plaintiff's manager took her employee badge and walked with her to clock her out, then walked the Plaintiff to the entrance of the Spa where she proceeded to leave.

46. Despite Jeriah's request for a reasonable accommodation based on her deeply held religious beliefs, and in spite of both her supervisor's and manager's recognition that she easily could be accommodated, Defendant disciplined Jeriah, placed her under threat of future discipline and instructed her to leave her religious beliefs at the door.

47. Defendant disciplined Jeriah for simply and respectfully stating her religious beliefs and requesting and receiving an accommodation on May 28, 2025 for those beliefs.

48. In addition, the "Personal Conduct Policy" emphasizes that "[t]his policy is not intended to preclude or dissuade employees from engaging in legally protected activities protected by state or federal law," which would include the exercise of their religious rights as protected under Title VII. As such,

despite its own policy, Defendant violated Title VII by punishing Jeriah for requesting (and receiving) a religious accommodation.

49. Defendant also denied Jeriah's request for future accommodation on June 4, 2025, which would not have created an undue hardship on Defendant.

## Plaintiff's Religious Objections to Defendant's Transgender Policy

50. Plaintiff is a Bible-believing Christian whose beliefs are guided and informed by prayer, the Holy Spirit, and the Holy Bible.

51. Plaintiff believes that God designed only two sexes – male and female. Genesis 2: 7-8; Genesis 1:26-28.

52. Also central to the Plaintiff's Christian faith is her calling to speak and act truthfully. Eph. 4:25; Proverbs 12:19; Proverbs 12:20-21. The locker rooms are designated based on the sexual binary: "Men's Locker Room" and "Ladies Locker Room," and have no signage designating them based on the scores of gender identities, so Plaintiff would be deceiving women by bringing a male into the space where women believe their privacy will be protected from members of the opposite sex.

53. Finally, Plaintiff's Christian faith dictates her belief in modesty and privacy. 1 Tim. 2:9-10. Therefore, it is a violation of Plaintiff's religious beliefs to be present where males might change or to encourage, aid, or facilitate the entry of a biological male into a designated space where females undress without

their consent, thereby subjecting those women to a sexually harassing environment where their privacy will be compromised.

## CLAIMS FOR RELIEF
### COUNT I – Retaliation
### (Title VII, 42 U.S.C. § 2000e-3(a))

54. Plaintiff incorporates all preceding paragraphs.

55. Title VII prohibits retaliation against an employee for requesting a religious accommodation or utilizing such an accommodation.

56. "To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in a protected activity under Title VII; (2) the employer took an adverse action against her; and (3) there was a causal connection between the employee's participation in the protected activity and the adverse employment action." *Wilkerson* v. *New Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 320 (3d Cir. 2008).

57. Plaintiff engaged in protected activity when she requested and utilized a religious accommodation granted by her supervisor.

58. Defendant retaliated against Plaintiff by subjecting her to adverse employment actions, namely writing her up and sending her home, because she sought and received that accommodation.

59. Defendant's conduct constitutes unlawful retaliation in violation of Title VII.

60. Defendant was intentional and acted with malice or reckless indifference to the federally-protected rights of Plaintiff, namely by telling her to leave her religious beliefs at the door, thereby entitling Plaintiff to punitive damages.

61. As a direct and proximate result of Defendant's actions, Plaintiff suffered damages including lost pay, a negative write-up which may result in future negative outcomes with Defendant, reputational harm, and emotional distress.

## COUNT II – Religious Discrimination
## (Title VII, 42 U.S.C. § 2000e-2(a))

62. Plaintiff incorporates all preceding paragraphs.

63. Title VII makes it unlawful to discriminate against an employee "because of such individual's . . . religion."

64. Plaintiff is a member of a protected class based on her sincerely held religious beliefs.

65. Defendant, through its managers and agents, criticized Plaintiff for her religious beliefs and instructed her to keep her religious convictions outside of the workplace.

66. Such conduct constitutes unlawful religious discrimination under Title VII.

67. Defendant was intentional and acted with malice or reckless indifference to the federally-protected rights of Plaintiff, namely by telling her to leave her religious beliefs at the door, thereby entitling Plaintiff to punitive damages.

68. As a direct and proximate result of Defendant's actions, Plaintiff suffered damages including lost pay, a negative write-up which may result in future negative outcomes with Defendant, reputational harm, and emotional distress.

### COUNT III – Failure to Accommodate Religion
### (Title VII, 42 U.S.C. § 2000e(j))

69. Plaintiff incorporates all preceding paragraphs.

70. Title VII requires employers to reasonably accommodate an employee's sincerely held religious practices unless doing so would impose an undue hardship.

71. A failure to accommodate claim requires that (1) Plaintiff hold a sincere religious belief that conflicted with a job requirement, (2) Plaintiff inform her employer of the conflict, and (3) Plaintiff receive discipline for failing to comply with the requirement.

72. Plaintiff holds a sincere religious belief that conflicts with Defendant's requirement that she transport biological males to and into the female changing room.

73. Plaintiff informed Defendant of the religious conflict and requested an accommodation that was reasonable, feasible, and would not have imposed undue hardship on Defendant.

74. Defendant failed to engage in a bilateral, individual, and cooperative process with Plaintiff regarding her religious accommodation request.

75. Defendant denied the requested accommodation despite its demonstrated ability to implement it, as Plaintiff's supervisor was fine with the accommodation and accommodated her in this way.

76. An accommodation of having another employee escort a guest has been used in more trivial situations, such as when one of the concierges needed to take a call or use the restroom.

77. Defendant thereby failed to provide Plaintiff with a reasonable accommodation of her religious beliefs, in violation of Title VII.

78. Accommodating Plaintiff's religious beliefs would not have resulted in undue hardship on the Defendant or its business as Plaintiff's supervisor first suggested the accommodation to Plaintiff, and there is always a second concierge on duty.

79. To meet their burden of proving an undue hardship, an employer must show that "the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff* v. *DeJoy*, 143 S. Ct. 2279 (2023).

80. Defendant was intentional and acted with malice or reckless indifference to the federally-protected rights of Plaintiff, namely by telling her to leave her religious beliefs at the door, thereby entitling Plaintiff to punitive damages.

81. As a direct and proximate result of Defendant's actions, Plaintiff suffered damages including lost pay, a negative write-up which may result in future negative outcomes with Defendant, reputational harm, and emotional distress.

### COUNT IV –Retaliation
### (Pennsylvania Human Relations Act, 43 P.S. § 955(d))

82. Plaintiff incorporates all preceding paragraphs.

83. The PHRA prohibits retaliation against an employee for exercising rights under the Act.

84. Plaintiff engaged in protected activity when she requested and utilized a religious accommodation.

85. Defendant retaliated against Plaintiff by subjecting her to adverse employment actions because of that activity.

86. Defendant's conduct constitutes unlawful retaliation under the PHRA.

87. Defendant was intentional and acted with malice or reckless indifference to the federally-protected rights of Plaintiff, namely by telling her to leave her religious beliefs at the door, thereby entitling Plaintiff to punitive damages.

88. As a direct and proximate result of Defendant's actions, Plaintiff suffered damages including lost pay, a negative write-up which may result in future negative outcomes with Defendant, reputational harm, and emotional distress.

### COUNT V – Religious Discrimination
### (PHRA, 43 P.S. § 955(a))

89. Plaintiff incorporates all preceding paragraphs.

90. The PHRA makes it unlawful for an employer to discriminate against an employee on the basis of religion.

91. Defendant criticized Plaintiff for her religious beliefs and required her to suppress them.

92. Such conduct constitutes unlawful religious discrimination under the PHRA.

93. Defendant was intentional and acted with malice or reckless indifference to the federally-protected rights of Plaintiff, namely by telling her to leave her religious beliefs at the door, thereby entitling Plaintiff to punitive damages.

94. As a direct and proximate result of Defendant's actions, Plaintiff suffered damages including lost pay, a negative write-up which may result in future negative outcomes with Defendant, reputational harm, and emotional distress.

### COUNT VI – Failure to Accommodate Religion
### (PHRA, 43 P.S. § 955(a))

95. Plaintiff incorporates all preceding paragraphs.

96. Pennsylvania courts interpret the PHRA's protections consistently with Title VII in the religious accommodation context.

97. Defendant failed to provide Plaintiff with a reasonable accommodation of her sincerely held religious practices, in violation of the PHRA.

98. Defendant was intentional and acted with malice or reckless indifference to the federally-protected rights of Plaintiff, namely by telling her to leave her religious beliefs at the door, thereby entitling Plaintiff to punitive damages.

99. As a direct and proximate result of Defendant's actions, Plaintiff suffered damages, including lost pay, a negative write-up which may result in future negative outcomes with Defendant, reputational harm, and emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jeriah Sellers asks that this Honorable Court grant the following relief:

A. Entry of a declaratory judgment stating that Defendant's actions violate 42 U.S.C. §§ 2000e(j), 2000e-2(a) and (k), and 2000e-3(a) and 43 P.S. § 955(a) and (d);

B. Award compensatory damages, including lost wages and any and all other pecuniary damages for violation of Plaintiff's rights and for the injuries she has suffered as a result of Defendant's conduct;

C. Award Plaintiff pre-judgment and post-judgment interest;

D. Award punitive damages for the extreme and outrageous conduct to which Defendant subjected Plaintiff;

E. Award Plaintiff the costs of this action, including reasonable attorney's fees and cost; and

F. Award any such further relief as this Court may deem just, proper and equitable and as permitted under 42 U.S.C. §2000e, *et seq.*, and 43 P.S. § 951, *et seq.*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims and issues.

Respectfully submitted,

Date: 10/21/2025        By:   */s/Andrea L. Shaw*

Andrea L. Shaw, Esquire
LAW OFFICE OF ANDREW H. SHAW, P.C.
Pa. Sup. Ct. I.D. No. 89333
2011 W. Trindle Road
Carlisle, PA 17013
(717) 243-7135 (phone)
(717) 243-7872 (facsimile)
andrea@ashawlaw.com

*Attorney for Plaintiff*