## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERIAH SELLERS, | : | CIVIL ACTION |
| | : | |
| *Plaintiff*, | : | NO. 1:25-CV-01979-KMN |
| | : | |
| v. | : | |
| | : | |
| HERSHEY ENTERTAINMENT & | : | |
| RESORTS COMPANY, d/b/a | : | |
| MELTSPA BY HERSHEY, | : | |
| | : | |
| *Defendant*. | : | ELECTRONICALLY FILED |
| | : | |
| | : | |
| | : | |

---

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS
## (January 12, 2026)

---

Respectfully submitted,

PILLAR AUGHT LLC

By:  /s/ *Lindsey E. Snavely*
Lindsey E. Snavely, Esquire
Attorney I.D. No. 308145 (PA)
lsnavely@pillaraught.com
4201 E. Park Circle
Harrisburg, PA 17111
(717) 308-9910

*Attorneys for Defendant*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................ ii

I.  FACTUAL ALLEGATIONS ...................................................... 1

    A.  Defendant's Core Values ................................................ 1

    B.  Plaintiff's Employment And Refusal To Escort Transgender
    Guests ............................................................................ 1

II.  PROCEDURAL HISTORY ...................................................... 3

III.  QUESTIONS PRESENTED ..................................................... 4

IV.  STANDARD OF REVIEW:  Motion to Dismiss ...................... 5

V.  ARGUMENT ......................................................................... 6

    A.  Plaintiff's Claims For Retaliation Under Title VII (Count I)
    And The PHRA (Count IV) Should Be Dismissed For Failure
    To State A Claim Because Plaintiff Does Not Allege That She
    Engaged In Any Protected Activity .................................... 6

    B.  Plaintiff Fails To State A Claim For Religious Discrimination
    Under Title VII (Counts II And III) And/Or The PHRA
    (Counts V And VI) ........................................................... 9

        a.  Failure To Accommodate (Title VII And/Or The
        PHRA) .................................................................. 9

        b.  Disparate Treatment (Title VII And/Or The PHRA) ....... 14

    C.  Alternatively, Plaintiff's Claims Under The PHRA (Counts
    IV, V, and VI) Should Be Dismissed Where Plaintiff Did Not
    Exhaust Her Administrative Remedies ............................. 15

VI.  CONCLUSION ..................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

## CASES

<u>Abramson v. William Paterson College of New Jersey</u>,
260 F.3d 265 (3d Cir. 2001) ..................................................................................9, 14

<u>Andres v. Takeda Pharmaceuticals America, Inc.</u>,
2024 WL 4635388 (W.D. Pa. Oct. 31, 2024) ...........................................................8

<u>Ashcroft v. Iqbal</u>,
556 U.S. 662 (2009) ..................................................................................................5

<u>Atkinson v. LaFayette Coll.</u>,
460 F.3d 447 (3d Cir. 2006) .....................................................................................6

<u>Bell Atl. Corp. v. Twombly</u>,
550 U.S. 544 (2007) ..................................................................................................5

<u>Burgh v. Borough Council of Borough of Montrose</u>,
251 F.3d 465 (3d Cir. 2001) ...................................................................................16

<u>Burtch v. Milberg Factors, Inc.</u>,
662 F.3d 212 (3d Cir. 2011) .....................................................................................6

<u>Bushra v. Main Line Health, Inc.</u>,
709 F. Supp. 3d 164 (E.D. Pa. 2023)........................................................................8

<u>Clay v. Advanced Computer Applications, Inc.</u>,
559 A.2d 917 (Pa. 1989)...................................................................................15, 16

<u>Connelly v. The Steel Valley Sch.</u>,
706 F.3d 209 (3d Cir. 2013) .....................................................................................6

<u>Divine Equality Righteous v. Overbrook School for the Blind</u>,
2023 WL 4763994 (E.D. Pa. Jul. 26, 2023) .............................................................8

<u>EEOC v. GEO Grp., Inc.</u>,
616 F.3d 265 (3d Cir. 2010) .....................................................................................9

EEOC v. N. Mem'l Health Care,
908 F.3d 1098 (8th Cir. 2018) ...................................................................7

Fowler v. UPMC Shadyside,
578 F.3d 203 (3d Cir. 2009) ....................................................................6

Golod v. Bank of Am. Corp.,
403 Fed. Appx. 699 (3d Cir. 2010) .........................................................14

Gray v. Main Line Hospitals, Inc.,
717 F. Supp. 3d 437 (E.D. Pa. 2024)........................................................9

Jackson v. Methodist Health Servs. Corp.,
121 F.4th 1122 (7th Cir. 2024)................................................................10

McCreary v. Adult World, Inc.,
729 F. Supp. 3d 458 (E.D. Pa. 2024)......................................................16

Moore v. City of Philadelphia,
461 F.3d 331 (3d Cir. 2006) ....................................................................7

Nelson v. Upsala College.,
51 F.3d 383 (3d Cir. 1995) ......................................................................6

Painadath v. Lattanzio,
2024 WL 1836500 (E.D. Pa. Apr. 26, 2024)...........................................15

Russo v. Patchogue-Medford Sch. Dist.,
129 F.4th 182 (2d Cir. 2025) ..................................................................10

Saracino v. New Jersey Dep't of UI/DT Fin.,
251 Fed. Appx. 95 (3d Cir. 2007) ...........................................................15

Stanley v. ExpressJet Airlines, Inc.,
808 Fed. Appx. 351 (6th Cir. 2020) ..........................................................8

Sutton v. Providence St. Joseph Med. Ctr.,
192 F.3d 826 (9th Cir. 1999) ..................................................................10

Taylor v. Southeastern Pennsylvania Transportation Authority,
2024 WL 3203318 (E.D. Pa. June 27, 2024)............................................................10

Theriault v. Dollar Gen.,
336 Fed. Appx. 172 (3d Cir. 2009) .........................................................................7

Trueblood v. Valley Cities Counseling and Consultation,
748 F. Supp. 3d 988 (W.D. Wash. 2024) ........................................................11, 13

Weber v. Leaseway Dedicated Logs., Inc.,
166 F.3d 1223, 1999 WL 5111 (10th Cir. 1999)....................................................10

**STATUTES**

42 U.S.C. § 2000e........................................................................................9, 11
43 P.S. § 955............................................................................................9, 11
43 Pa.C.S. § 962(c)(1) ....................................................................................16

**RULES**

Federal Rule of Civil Procedure 12(b)(6).................................................................5

**OTHER**

https://www.hersheyentertainmentandresorts.com/working-here/core-values/ ........1

## I.    FACTUAL ALLEGATIONS[1]

### A.    Defendant's Core Values.

Defendant, Hershey Entertainment & Resorts Company d/b/a MeltSpa by Hershey ("Defendant" or "MeltSpa"), has a long history of welcoming everyone to its facilities and ensuring that all guests have a comfortable and safe visit.  [Compl. (Dkt. No. 1), at Exhibit B (Spa Transgender Policies).]   To that end, guests of MeltSpa are welcomed to use the locker room that corresponds with their gender identity,[2] and additional options are available for those guests who would prefer more privacy.  [Id.] Indeed, Defendant's core values —instilled in all employees— are rooted in principles that include respect for others, compelling the treatment of all people with dignity while respecting their differences and ideas.   [See https://www.hersheyentertainmentandresorts.com/working-here/core-values/  (last accessed January 12, 2026).

### B.    Plaintiff's Employment And Refusal To Escort Transgender Guests.

Plaintiff, Jeriah Sellers ("Plaintiff"), has worked as a part-tine Concierge at

---

[1] As is required by the relevant procedural standard, the well-pleaded facts of Plaintiff's Complaint will be treated as true, but only for purposes of the instant Motion to Dismiss.  To be sure, Defendant disputes and denies many of these factual allegations, and nothing herein is an admission of same.

[2] Guests complete a registration questionnaire that provides options for "Female," "Male," or "Non-Binary."  [Compl. (Dkt. No. 1) at ¶ 40.]

MeltSpa since in or about August 2023.  [Compl. (Dkt. No. 1), at ¶ 14.]  As a Concierge, Plaintiff is required to escort guests back to either the door of the male locker room or within the female locker room, where the guest may change prior to their scheduled treatment.  [Id. at ¶ 15.]

On or about May 28, 2025, Plaintiff's supervisor spoke with Plaintiff about a guest scheduled for services that day.  [Compl. (Dkt. No. 1), at ¶ 18.] More specifically, the supervisor asked Plaintiff if she knew the guest and reminded her that the guest is a male who identifies as a woman.  [Id.]  The supervisor also reminded Plaintiff that, per MeltSpa policy, she was expected to escort the guest to the women's locker room when she arrived and show the guest around.  [Id. at ¶¶ 19-20.]

In response, Plaintiff advised her supervisor that she "was not comfortable with what she was being asked to do, which was to escort a biological male into a designated female locker room facility."  [Compl. (Dkt. No. 1), at ¶ 22.]  Plaintiff **does not** allege that she advised her supervisor at that time that this was due to any religious belief.  [Id., generally.] So that the guest received the same welcoming and safe atmosphere that MeltSpa offered other, non-transgender guests, the supervisor, herself, then escorted the guest to the women's locker room.  [Id. at ¶ 23.]

On or about May 31, 2025, during Plaintiff's next scheduled shift, Plaintiff and her supervisor met to discuss the incident that occurred three (3) days earlier.

[Compl. (Dkt. No. 1), at ¶ 26.]  At that time —and for the first time during her employment— Plaintiff explained that she is a Christian, and "she was not comfortable" escorting a biological male into a women's locker room "because it went against her religious beliefs."  [Id. at ¶ 28.]  Plaintiff believes that God designated only two (2) sexes —male and female.  [Id. at ¶¶ 9, 51.]  As such, Plaintiff requested that she not be required to escort a male guest who identifies as a woman to the women's locker room.  [Id. at ¶ 30.]

On or about June 4, 2025, a Human Resources representative met with Plaintiff to discuss the incident that occurred on May 28, 2025.  [Compl. (Dkt. No. 1), at ¶ 36.]  Plaintiff was issued a Personnel Action Memorandum and one (1) day suspension for violating the Spa Transgender Policy and refusing to assist a guest based on their gender identity.  [Id. at ¶ 42, at Exhibit C (Personal Action Memorandum).]  Plaintiff was also advised that moving forward, as part of her Concierge duties, she was required to escort guests to the locker room based on their gender identity.  [Id. at ¶ 40.]

Plaintiff currently remains employed at MeltSpa in her same position, and she has not received any further disciplinary actions since the incident in May 2025. [Compl. (Dkt. No. 1), generally.]

## II.    PROCEDURAL HISTORY

Plaintiff filed a Charge of Discrimination with the Equal Employment

Opportunity Commission ("EEOC"), dual-filed with the Pennsylvania Human Relations Commission ("PHRC"), on or about July 21, 2025. [Compl. (Dkt. No. 6).] The EEOC issued a Notice of Right to Sue on July 23, 2025. [Id. at ¶ 7.] Plaintiff does not allege that the PHRC has issued any similar document. [Id., generally.]

Plaintiff thereafter initiated this action by filing a Complaint on October 21, 2025. [Compl. (Dkt. No. 1).] In the Complaint, Plaintiff sets forth the following claims: (1) retaliation in violation of Title VII of the Civil Rights Act ("Title VII") (Count I); (2) religious discrimination in violation of Title VII (Count II); (3) failure to accommodate religion in violation of Title VII (Count III); (4) retaliation in violation of the Pennsylvania Human Relations Act ("PHRA") (Count IV); (5) religious discrimination in violation of the PHRA (Count V); and (6) failure to accommodate religion in violation of the PHRA (Count VI). [Id., generally.]

On January 12, 2026, Defendant filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Brief is filed contemporaneously with that Motion and in support thereof.

## III.    QUESTIONS PRESENTED

   **A.    Whether Plaintiff's Claims For Retaliation Under Title VII (Count I) And The PHRA (Count IV) Should Be Dismissed For Failure To State A Claim Because Plaintiff Does Not Allege That She Engaged In Any Protected Activity.**

   **Suggested Answer:      Yes.**

**B.**    **Whether Plaintiff Fails To State A Claim For Religious Discrimination Under Title VII (Counts II And III) And/Or The PHRA (Counts V And VI).**

**Suggested Answer:    Yes.**

**C.**    **Alternatively, Whether Plaintiff's Claims Under The PHRA (Counts IV, V, and VI) Should Be Dismissed Where Plaintiff Did Not Exhaust Her Administrative Remedies.**

**Suggested Answer:    Yes.**

## IV.    STANDARD OF REVIEW: Motion to Dismiss

A cause of action must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the alleged facts, even when taken as true, fail to state a claim upon which relief may be granted.  See Fed. R. Civ. P. 12(b)(6).  While the Federal Rules governing pleadings do not require "detailed factual allegations," "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (noting that conclusory allegations will no longer survive a motion to dismiss and stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  In other words, a complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 557).

Following the decisions in <u>Twombly</u> and <u>Iqbal</u>, the United States Court of Appeals for the Third Circuit confirmed that the "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009). Accordingly, the following three steps are taken when determining the sufficiency of the allegations contained in a complaint:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

<u>Connelly v. The Steel Valley Sch.</u>, 706 F.3d 209, 212 (3d Cir. 2013) (citing <u>Burch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 221 (3d Cir. 2011)).

## V.    ARGUMENT

### A.    Plaintiff's Claims For Retaliation Under Title VII (Count I) And The PHRA (Count IV) Should Be Dismissed For Failure To State A Claim Because Plaintiff Does Not Allege That She Engaged In Any Protected Activity.

To allege a prima facie case of retaliation under Title VII and the PHRA,[3] Plaintiff must plead that "(1) she engaged in activity protected by Title VII; (2) the

---

[3] "Claims under the PHRA are interpreted coextensively with Title VII claims." <u>Atkinson v. LaFayette Coll.</u>, 460 F.3d 447, 454 (3d Cir. 2006) (citation omitted).

employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." <u>Nelson v. Upsala College</u>., 51 F.3d 383, 386 (3d Cir. 1995). "With respect to 'protected activity,' the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the 'participation clause') and those who oppose discrimination made unlawful by Title VII (the 'opposition clause')." <u>Moore v. City of Philadelphia</u>, 461 F.3d 331, 341 (3d Cir. 2006). Thus, "[t]o engage in protected activity, the employee must either participate in certain Title VII proceedings … or oppose discrimination made unlawful under Title VII … ." <u>Theriault v. Dollar Gen.</u>, 336 Fed. Appx. 172, 174 (3d Cir. 2009)[4] (citing <u>Moore</u>, 461 F.3d at 331).

Plaintiff alleges that she was subjected to an adverse employment action (*i.e.* "namely writing her up and sending her home") after "she requested and utilized a religious accommodation granted by her supervisor." [Compl. (Dkt. No. 1), at ¶ 57.][5] However, in <u>EEOC v. N. Mem'l Health Care</u>, 908 F.3d 1098, 1102 (8th Cir. 2018), the Eighth Circuit held that "merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious

---

[4] Unpublished decisions are attached hereto as **Exhibit A**.

[5] Plaintiff did not plead that she advised her supervisor of her religious beliefs prior to her request to not accommodate the guest. [<u>See</u> Compl. (Dkt. No. 1), generally.] As such, this conclusory allegation is disingenuous, at best.

accommodation."  Similarly, in <u>Stanley v. ExpressJet Airlines, Inc.</u>, 808 Fed. Appx. 351, 358 (6th Cir. 2020), the Sixth Circuit held that "a request for an accommodation does not constitute protected activity under Title VII, which clearly delineates two options: opposition to discriminatory practice or participation in an investigation."

District courts in this Third Circuit have repeatedly relied upon the reasoning in the Sixth and Eighth Circuits' opinions in similarly holding that requesting an accommodation, alone, is not "protected activity" for purposes of a Title VII religious retaliation claim.  <u>See e.g.</u> <u>Bushra v. Main Line Health, Inc.</u>, 709 F. Supp. 3d 164, 172-73 (E.D. Pa. 2023) (holding that plaintiff could not prevail on his retaliation claim merely because he applied for a religious accommodation); <u>.</u> <u>Equality Righteous v. Overbrook School for the Blind</u>, 2023 WL 4763994, *10 (E.D. Pa Jul. 26, 2023) ("Merely applying for a religious accommodation —rather than opposing the allegedly unlawful denial of a religious accommodation— does not constitute protected activity for the purpose of a Title VII retaliation claim.") (collecting cases); <u>Andres v. Takeda Pharmaceuticals America, Inc.</u>, 2024 WL 4635388, *3 (W.D. Pa. Oct. 31, 2024) (holding that a religious exemption request is not protected activity because "Title VII's anti-discrimination provision protects those who either oppose unlawful discrimination under Title VII or participate in Title VII proceedings.").

Because Plaintiff does not allege that engaged in any cognizable protected activity (*i.e.* she did not oppose the alleged unlawful denial of a religious accommodation prior to receiving her suspension, and she did not participate in any Title VII proceedings prior to the suspension), Plaintiff's retaliation claim under Title VII and PHRA should be dismissed.

**B.**    **Plaintiff Fails To State A Claim For Religious Discrimination Under Title VII (Counts II And III) And/Or The PHRA (Counts V And VI).**

Both Title VII and the PHRA prohibit religious discrimination.  42 U.S.C. § 2000e, *et seq.*; 43 P.S. § 955.  "Under these laws, employees may assert different theories of religious discrimination: failure to accommodate and disparate treatment."  Gray v. Main Line Hospitals, Inc., 717 F. Supp. 3d 437, 445 (E.D. Pa. 2024) (citing Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 281 (3d Cir. 2001)).  Plaintiff asserts both theories; and, both of Plaintiff's asserted theories fail.

**a.  Failure To Accommodate (Title VII And/Or The PHRA).**

To allege a prima facie case of failure to accommodate, "the employee must show: (1) she holds a sincere religious belief that conflicts with a job requirement; (2) she informed her employer of the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement."  EEOC v. GEO Grp., Inc., 616 F.3d 265, 271 (3d Cir. 2010) (internal quotation marks and citation omitted).  "[T]he

burden [then] shifts to the employer to show either [1] it made a good-faith effort to reasonably accommodate the religious belief, or [2] such an accommodation would work an undue hardship upon the employer and its business." Id. (citation omitted).

Critically, courts both in and outside of this Third Circuit have held that an employer is not obligated to grant an accommodation that would require that employer to violate the law.    See Taylor v. Southeastern Pennsylvania Transportation Authority, 2024 WL 3203318, *27 (E.D. Pa. June 27, 2024) (collecting cases); see also Russo v. Patchogue-Medford Sch. Dist., 129 F.4th 182, 186 (2d Cir. 2025) ("[A]n accommodation that would require an employer to violate the law imposes an undue hardship."); Jackson v. Methodist Health Servs. Corp., 121 F.4th 1122, 1127 (7th Cir. 2024) (employer not obligated to accommodate an employee if doing so would place it on the razor's edge of legal liability) (citation and quotations omitted); Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 830–31 (9th Cir. 1999) ("[C]ourts agree that an employer is not liable under Title VII when accommodating an employee's religious beliefs would require the employer to violate federal or state law. This court has held that the existence of such a law establishes 'undue hardship' (rather than prevents an employee from establishing a prima facie case)."); Weber v. Leaseway Dedicated Logs., Inc., 166 F.3d 1223 (Table), 1999 WL 5111, *1 (10th Cir. 1999) ("Requiring Defendant to violate these laws in order to accommodate Plaintiff would result in undue hardship

to Defendant.").

Plaintiff's only religious accommodation request, as plead in the Complaint, was that she did not have to escort a biologically male guest into the women's locker room.  [See Compl. (Dkt. No. 1), generally.]  However, granting Plaintiff this accommodation would outright sanction discrimination against her co-workers and Defendant's clients in violation of the PHRA.  To be sure, both Title VII and the PHRA prohibit discrimination *by and against employees* on the basis of sex. 42 U.S.C. § 2000e, *et seq.*; 43 P.S. § 955.   The PHRA also forbids employees of MeltSpa, as a place of public accommodation, to discriminate *against clients* of MeltSpa.  See 43 P.S. § 955 (h)(11)(i)(1) (prohibiting "any person being the . . . agent or employe of any public accommodation, resort, or amusement to . . . [r]efuse, withhold from, or deny to any person because of his . . . sex, . . . either directly or indirectly, any of the accommodations, advantages, facilities or privileges of such public accommodation, resort or amusement").

In Trueblood v. Valley Cities Counseling and Consultation, 748 F. Supp. 3d 988 (W.D. Wash. 2024), a former employee, who identified as Christian, brought a religious discrimination claim claiming that her former employer failed to accommodate her religious practices in violation of Title VII and Washington state law when, *inter alia*, it denied accommodations for the employee "to not work with clients who used preferred pronouns; "to use a person's name (co-workers and

clients) rather than preferred pronouns"; and "to not use preferred pronouns but rather the person's name in case consultation, supervision and discussion with team members" ("Disputed Accommodations"). Id. at 1006. Holding that the former employer established undue hardship and denying the former employee's failure to accommodate claim, the court stated, in part:

> Against this backdrop, the court has little trouble concluding that the Disputed Accommodations impose undue hardship upon VCCC by placing it in the untenable position of affronting both federal and state anti-discrimination law, and exposing it to potential liability. . . [T]hese requests would have permitted Ms. Trueblood to address her transgender colleagues and clients by name only, while addressing her cisgender colleagues and clients by both name and pronoun. This practice would acknowledge and validate cisgender individuals' identities without affording transgender individuals the same courtesy, solely because they are transgender. . . Such a practice would treat transgender individuals differently, and disadvantageously, on the basis of gender identity— that is discrimination, point blank. Neither Title VII nor WLAD requires an employer to accommodate a plainly discriminatory practice.
>
> . . .
>
> Turning to Accommodation One, this request would involve Ms. Trueblood offering not to work with clients who use preferred pronouns. This practice would treat transgender clients differently and disadvantageously because the "offer" would not extend to all clients; instead, it would target transgender clients solely on the basis of gender identity. This, too, is discriminatory and therefore accommodating this request would be an undue hardship for VCCC. What is more, implementing Accommodation One would require VCCC to: (1) identify clients' preferred pronouns during the intake process in order to proactively avoid pairing Ms. Trueblood with transgender clients; or (2) permit Ms. Trueblood to, upon learning that a

client uses preferred pronouns, either suddenly begin using names only or cease working with the client entirely. Both options are discriminatory and would invite potential liability under WLAD's public accommodations provisions. The former could result in harassment within the meaning of WLAD through "unwelcome personal questions" about a clients' gender identity, when the topic would not otherwise arise in the intake process. The latter would "alter" the clients' healthcare experiences and continuity of care. In the case at bar, the "single discriminatory act" of removing M and C from Ms. Trueblood's caseload certainly altered the clients' healthcare experiences based on their pronoun usage and gender identities, possibly in a manner that could give rise to liability under WLAD.

Put simply, VCCC could not grant the Disputed Accommodations without discriminating against its transgender staff and clients, and without at least some danger of liability under federal and state anti-discrimination law. This is sufficient to establish undue hardship under longstanding Ninth Circuit precedent.

Id. at 1008-1010 (internal citations and quotations omitted).

A similar set of allegations here yields a similar result. Plaintiff's only plead accommodation —to not escort a biologically male guest into the women's locker room— would treat transgender clients different, targeting transgender clients on the basis of their gender identity. To recognize such an accommodation condones discrimination at its worst, allows a MeltSpa employee to facially discriminate against guests, and opens Pandora's box. Can a Jewish Palestinian refuse to service an Israeli Jew? Can a Caucasian refuse to service an African American? Where is the line, and who draws it? The results of allowing such absurd "accommodations" fly directly in the face of Title VII's and PHRA's provisions prohibiting such

discrimination.

Because Plaintiff's only plead accommodation is discriminatory on its face, her failure to accommodate claims pursuant to Title VII (Count II) and the PHRA (Count IV) must be dismissed.

### b.  Disparate Treatment (Title VII And/Or The PHRA).

To plead a claim for religious discrimination under the disparate treatment theory, Plaintiff must allege that she: (1) is "a member of a protected class"; (2) "suffered an adverse employment action"; and (3) "nonmembers of the protected class were treated more favorably."  Abramson, 260 F.3d at 281-82.

Simply put, Plaintiff has not sufficiently alleged the third element of her prima facie case in that nowhere in her Complaint does she make specific allegations that nonmembers of the protected class were treated more favorably.  More specifically, Plaintiff does not allege that other employees outside of Plaintiff's protected religious class refused to perform their Concierge job responsibilities and escort guests to the locker rooms but were not disciplined.

Accordingly, Plaintiff's disparate treatment claims under Title VII (Count II) and the PHRA (Count V) must be dismissed.  See e.g. Golod v. Bank of Am. Corp., 403 Fed. Appx. 699, 703 (3d Cir. 2010) (emphasizing that conclusory allegations of discrimination based on religion are not adequate to successfully support a claim because they do not include specific facts that show nonmembers of the protected

class are treated more favorably); Painadath v. Lattanzio, 2024 WL 1836500, *4 (E.D. Pa. Apr. 26, 2024) (granting motion to dismiss on disparate treatment religious discrimination claim where plaintiff did not allege differential treatment).

### C. Alternatively, Plaintiff's Claims Under The PHRA (Counts IV, V, and VI) Should Be Dismissed Where Plaintiff Did Not Exhaust Her Administrative Remedies.

Alternatively, even assuming Plaintiff has sufficiently plead religious retaliation and discrimination claims under the PHRA (which she has not), Plaintiff's PHRA claims must be dismissed for not properly exhausting her administrative remedies. To properly state a cause of action for discrimination under Title VII or the PHRA, a plaintiff is required to first "exhaust" her "administrative remedies" by submitting those claims to the EEOC or the PHRC for investigation. See, e.g., Saracino v. New Jersey Dep't of UI/DT Fin., 251 Fed. Appx. 95, 97 (3d Cir. 2007) ("Prior to bringing a Title VII suit in … court, a civil rights plaintiff must file a discrimination charge with the [EEOC]."); Clay v. Advanced Computer Applications, Inc., 559 A.2d 917, 918-20 (Pa. 1989) (holding that to assert a claim in court for employment discrimination under the PHRA, the plaintiff must first avail himself of the administrative remedies available through the PHRA, and finding such administrative procedures mandatory, not discretionary).

The PHRC has "exclusive jurisdiction over the claim for a period of one year in order to investigate and, if possible, conciliate the matter."  Burgh v. Borough

Council of Borough of Montrose, 251 F.3d 465, 471 (3d Cir. 2001) (citations omitted). Accordingly, a plaintiff "*may not* file an action in court for a period of one year." Id. (emphasis added) (citing Clay, 559 A.2d at 921; 43 Pa.C.S. § 962(c)(1)). Where a plaintiff brings suit for an alleged PHRA violation during the PHRC's one-year conciliation period, the plaintiff has not exhausted their administrative remedies as required by the PHRA. McCreary v. Adult World, Inc., 729 F. Supp. 3d 458, 466 (E.D. Pa. 2024). "In such a scenario, a plaintiff is barred from asserting a PHRA claim." Id. (collecting cases).

Here, Plaintiff filed her Complaint approximately three (3) months (*i.e.* October 21, 2025) after dual-filing her administrative complaint with the EEOC and PHRC (*i.e.* July 21, 2025). [Complaint (Dkt. No. 1), at ¶ 6.] In doing this, Plaintiff has not exhausted her administrative remedies as required by the PHRA. Accordingly, Plaintiff's PHRA claims are not properly before this Court, and Counts IV, V, and VI must be dismissed.

## VI.    CONCLUSION

For all of the foregoing reasons, Defendant, Hershey Entertainment & Resorts Company, d/b/a MeltSpa by Hershey, respectfully requests that their Motion to Dismiss should be granted, and that Plaintiff's Complaint should be dismissed with prejudice.

Respectfully submitted,

PILLAR AUGHT LLC

By:   /s/ *Lindsey E. Snavely*
Lindsey E. Snavely, Esquire
Attorney I.D. No. 308145 (PA)
lsnavely@pillaraught.com
4201 E. Park Circle
Harrisburg, PA 17111
(717) 308-9910

*Attorneys for Defendant*

## <u>WORD COUNT CERTIFICATION</u>

I hereby certify that the word count of the forgoing Brief, exclusive of tables

and certificates, as determined by the Microsoft Word software with which it was

produced, is <u>3,875</u> words.

/s/ *Lindsey E. Snavely*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 12, 2026, a true and correct copy of the foregoing document was served electronically on the following:

Andrea L. Shaw, Esquire
Law Office of Andrew H. Shaw, P.C.
2011 Trindle Road
Carlisle, PA 17013
andrea@ashawlaw.com
*Attorneys for Plaintiff*

Randall L. Wenger, Esquire
Jeremy L. Samek, Esquire
Janice Martino-Gottshall, Esquire
Independence Law Center
23 North Front Street
Harrisburg, PA 17101
rwenger@indlawcenter.org
jsamek@indlawcenter.org
jmgottshall@indlawcenter.org
*Attorneys for Plaintiff*

I understand that notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system, and that parties may access this filing through the Court's system.

/s/ *Lindsey E. Snavely*