## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERIAH SELLERS, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | Case No. 1:25-CV-01979-KMN |
| | : | |
| v. | : | Judge Neary |
| | : | |
| HERSHEY ENTERTAINMENT & | : | |
| RESORTS COMPANY, d/b/a | : | |
| MELTSPA BY HERSHEY, | : | |
| | : | |
| Defendant. | : | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

ANDREA L. SHAW, ESQUIRE
PA Attorney I.D. No. 89333
Law Office of Andrew H. Shaw, P.C.
2011 W. Trindle Road
Carlisle, PA 17013
(717) 243-7135 (phone)
(717) 243-7872 (facsimile)

RANDALL L. WENGER, ESQUIRE
PA Attorney I.D. No. 86537
JEREMY L. SAMEK, ESQUIRE
PA Attorney I.D. No. 205060
JANICE MARTINO-GOTTSHALL, ESQUIRE
PA Attorney I.D. No. 49469
Independence Law Center
23 N. Front Street
Harrisburg, PA 17101
(717) 657-4990 (phone)
(717) 545-8107 (facsimile)

*Attorneys for Plaintiff Jeriah Sellers*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ……………….…………………………….. ii

PRELIMINARY STATEMENT……………………………………………. 1

COUNTER STATEMENT OF FACTS …………………………………….. 1

COUNTER STATEMENT OF QUESTIONS INVOLVED ……………….. 3

LEGAL STANDARD ……………………………………………………… 3

ARGUMENT …………………………………………………………….. 5

    **A. Plaintiff States a Claim for Retaliation** ………………..…….….. 7

    **B. Plaintiff States a Claim for Religious Discrimination under
       Title VII Under Both Failure to Accommodate and
       Disparate Treatment Theories** …………………………..………   12

        **1. Defendant's Undue Hardship Arguments Against
           Plaintiff's Failure to Accommodate Claims are
           Premature** ………………………………….….…………   12

        **2. Defendant's Claim That the Requested
           Accommodation Would be Illegal is Incorrect** ……… 15

        **3. Plaintiff States a Claim for Disparate Treatment** …… 17

    **C. PHRA Claims** …………………………………………….   19

CONCLUSION ……………………………………………………………   20

CERTIFICATE OF WORD COUNT ……………………………………   21

CERTIFICATE OF SERVICE …………………………………..…………   22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andres v. Takeda Pharmaceuticals America, Inc.*,
2024 U.S. Disc. LEXIS 197877 (W.D. Pa. Oct. 31, 2024) ................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................... .........................................3, 4, 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................... ............................................3, 4

*Bilyeu v. UT-Battelle, LLC*,
154 F.4th 396 (6th Cir. 2025) ...................... .....................................11

*Bostock v. Clayton Cty.*,
590 U.S. 644 (2020)............................................................................16

*Burgh v. Borough Council*,
251 F.3d 465 (3d Cir. 2010) ...................... .....................................6, 19

*Carvalho-Grevious v. Del. State Univ.*,
851 F.3d 249 (3d Cir. 2017) ...................... .............................................8

*City of Phila. v. Pa. Human Relations Comm'n*,
300 A.2d 97 (Pa. Commw. Ct. 1973) ............... .....................................16, 17

*Connelly v. Lane Constr. Corp.*,
809 F.3d 780 (3d Cir. 2016) ...................... .................................4, 13, 18

*Crawford v. Metro. Gov't of Nashville & Davidson Cty.*,
555 U.S. 271 (2009)............................... ...............................................8, 9

*Doe v. Princeton Univ.*,
30 F.4th 335 (3d Cir. 2022)...................... ...........................................4

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
575 U.S. 768 (2015)............................... .........................................18, 19

*EEOC v. GEO Grp.*,
   616 F.3d 265 (3d Cir. 2010) ........................ ...........................................13

*EEOC v. N. Mem. Health Care*,
   908 F.3d 1098 (8th Cir. 2018) ........................ ..........................................9, 10

*Evans v. Lakewood Rehab. & Healthcare Ctr.*,
   2025 U.S. Dist. LEXIS 75096 (M.D. Pa. April 21, 2025) .................................19

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009) ........................ ...........................................13

*Groff v. DeJoy*,
   600 U.S. 447 (2023).................................. ........................................6, 13

*Hedges v. United States*,
   404 F.3d 744 (3d Cir. 2005) ........................ ............................................5

*Kaite v. Altoona Student Trans., Inc.*,
   296 F. Supp. 3d 736 (W.D. Pa. 2017)................. .....................................7, 14

*Kost v. Kozakiewicz*,
   1 F.3d 176 (3d Cir. 1993) ........................ ..............................................3

*Maio v. Aetna*,
   221 F.3d 472 (3d Cir. 2000) ........................ ............................................5

*Makky v. Chertoff*,
   541 F.3d 205 (3d Cir. 2008) ........................ ...........................................18

*Martinez v. UPMC Susquehanna*,
   986 F3d 261 (3d Cir. 2021) ........................ ............................................5

*Miller v. Tithonus Tyrone, L.P.*,
   2020 U.S. Dist. LEXIS 75429 (W.D. Pa. April 20, 2020) .................................13

*Rackovan v. Pa. State Univ.*,
   2025 U.S. Dist. LEXIS 219445 (M.D. Pa. 2025)................................................14

*Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*,
   470 F.3d 535 (3d Cir. 2006) ........................ .................................6

*Shelton v. Univ. of Med. Dentistry of N.J.*,
  223 F.3d 220 (3d Cir. 2000) ................................ ................................................6

*Smith v. City of Atl. City*,
  138 F.4th 759 (3d Cir. 2025) ................................ ........................................11, 12

*Stanley v. ExpressJet Airlines, Inc.*,
  808 Fed. Appx. 351 (6th Cir. 2020)................ ...............................................9, 11

*Thompson v. N. Am. Stainless, LP*,
  562 U.S. 170 (2011)................................ .....................................................7

*Trans World Airlines, Inc. v. Hardison*,
  432 U.S. 63 (1977)................................ .....................................................6

*Tuan Anh Nguyen v. INS*,
  533 U.S. 53 (2001)................................ ...................................................17

*Ulrich v. Lancaster Gen. Health*,
  2023 U.S. Dist. LEXIS 64750 (W.D. Pa. 2020). ...............................................13

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
  570 U.S. 338 (2013)................................ .....................................................8

*Wilkerson v. New Media Tech. Charter Sch. Inc.*,
  522 F.3d 315 (3d Cir. 2008) ................................ ............................................7, 8

**Statutes**

42 U.S.C. § 2000e-2(a) ................................ ................................................5

42 U.S.C. § 2000e-2(a)(1)................................ ................................................17

42 U.S.C. § 2000e-3 ................................ .....................................................7

42 U.S.C. § 2000e-3(a) ................................ ..........................................3, 8, 10

42 U.S.C. § 2000e(j) ................................ .....................................................6

24 P.S. § 7-740................................ .....................................................15

43 P.S. § 955(a)................................ ................................................6

43 Pa. C.S. § 962(c)(1)................................ ................................................19

iv

**Regulations**

7 Pa. Code § 1.57 ........................................ ...............................................15

7 Pa. Code § 82.9 ........................................ ...............................................15

28 Pa. Code § 18.62 ........................................ .........................................15

28 Pa. Code § 19.21 ........................................ .........................................15

28 Pa. Code § 205.38 ........................................ .......................................15

34 Pa. Code § 41.31 ........................................ .........................................15

34 Pa. Code § 41.32 ........................................ ....................................15, 16

34 Pa. Code § 41.121 ........................................ .......................................16

34 Pa. Code § 41.122 ........................................ .......................................16

**Other Authorities**

*EEOC, Compliance Manual Section 12:*
    *Religious Discrimination* § 12-V.B (2008) ........ ..................................9

Exec. Order No. 14168, *Defending Women From Gender Ideology*
    *Extremism and Restoring Biological Truth to the Federal Government*,
    90 Fed. Reg. 8615 (Jan. 30, 2025) (effective Jan. 20, 2025)............................16

## I.    PRELIMINARY STATEMENT

Defendant mischaracterizes Plaintiff's narrow request for co-worker assistance in escorting biological males to the women's locker rooms as a refusal to serve transgender guests. In fact, Plaintiff was willing to provide all services short of escorting a male into the women's locker room, and the accommodation was initially granted without any problem, let alone a hardship, as alleged. Defendant's Motion ignores binding Third Circuit precedent and prematurely raises fact-intensive defenses.

## II.    COUNTERSTATEMENT OF FACTS

Plaintiff Jeriah Sellers is a practicing Christian whose sincerely held religious beliefs include the conviction that biological sex is immutable and that she cannot affirm or participate in actions that contradict this belief, such as escorting a biological male into a women's locker room, and where female guests could be undressing. (ECF 1 at ¶¶ 9, 27-28, 50-53). Plaintiff has been employed by Defendant Hershey Entertainment & Resorts Company, d/b/a MeltSpa by Hershey ("MeltSpa"), as a concierge since 2023. (ECF 1 at 14). In this role, her duties include escorting guests to locker rooms prior to spa services. (ECF 1 at ¶ 15). MeltSpa provides salon and spa treatments in a setting where guests frequently undress in multi-user locker rooms, and despite the signs on the door designating the mulit-user locker room as specifically for men or women, Defendant maintains an internal

1

policy allowing guests to use locker rooms based on their self-identified gender. (ECF 1 at ¶¶ 10, 39, Ex. B).

On May 28, 2025, Plaintiff's supervisor asked her to escort the male guest to the women's locker room once the guest arrived. (ECF 1 at ¶¶ 18-19). Plaintiff told her supervisor that she was uncomfortable with this directive, and so the supervisor politely volunteered to escort the guest. (ECF 1 at ¶¶ 22-23). Three days later, during Plaintiff's next-scheduled shift, her manager asked about the accommodation provided by the supervisor, and Plaintiff explained her religious beliefs against escorting a biological male into the women's locker room. (ECF 1 at ¶¶ 26-28). The manager suggested that in the future, Plaintiff's religious beliefs could be accommodated by having a co-worker or manager assume the task of escorting the guest as is done in a variety of other circumstances, but stated that she would confirm the accommodation with Defendant's HR department. (ECF 1 at ¶¶ 31-34). The concierges at MeltSpa routinely have a co-worker assume the task of escorting a guest for secular reasons. (ECF 1 at ¶ 32). However, on June 4, 2025, when Plaintiff arrived at work, she was summoned to a meeting with Defendant's corporate HR representative, where she was disciplined for her accommodation request and for utilizing the accommodation of May 28. (ECF 1 at ¶¶ 36-46). Plaintiff was issued a written warning, suspended for the day without pay, and told to leave her religious beliefs at the door. (ECF 1 at ¶¶ 37-38). HR explicitly refused any future

2

accommodation, stating that Plaintiff must escort all guests regardless of her religious beliefs or face further discipline. (ECF 1 at ¶¶ 40, 49).

## III.    COUNTERSTATEMENT OF QUESTIONS INVOLVED

A.    Whether Plaintiff's request for a religious accommodation and utilizing the accommodation granted to her, can qualify as "opposition" to an unlawful employment practice under Title VII, and thus form the basis of a retaliation claim under 42 U.S.C. § 2000e-3(a).

Suggested Answer: YES

B.    Whether Plaintiff Sufficiently Pled Claims for Religious Discrimination for Failure to Accommodate and Disparate Treatment?

Suggested Answer: YES

C.    Whether Plaintiff's PHRC Claims May be Dismissed Without Prejudice and Plaintiff Permitted to Re-file Those Claims Once PHRC's One-Year Jurisdiction has Passed?

Suggested Answer: YES

## IV.    LEGAL STANDARD

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In rendering a decision on a motion to dismiss, a court must accept all well-pleaded factual

3

allegations as true and view them in the light most favorable to the plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022).

Detailed pleading is generally not required. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016). The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555. Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff

4

pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

To defeat a motion to dismiss, it is sufficient, but not necessary, to allege a prima facie case. *Martinez v. UPMC Susquehanna*, 986 F3d 261, 266 (3d Cir. 2021). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000).

## V.    ARGUMENT

Under Title VII, an employer is prohibited from discriminating against employees on the basis of their sincerely held religious beliefs. *See* 42 U.S.C. § 2000e-2(a) ("It shall be unlawful employment practice for an employer…(1) to… discharge any individual, or otherwise to discriminate against any individuals with respect to his compensation, terms, conditions, or privileges of employment because of such individual's…religion or (2) to limit, segregate, or classify his employees…in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee,

because of such individual's…religion."). *See also Shelton v. Univ. of Med. Dentistry of N.J.*, 223 F.3d 220, 224 n.4 (3d Cir. 2000).

Title VII defines "religion" as "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). As the Supreme Court recognized nearly 50 years ago: "The intent and effect of this definition was to make it an unlawful employment practice…for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees…." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977); *see also Groff v. DeJoy*, 600 U.S. 447, 453-54 (2023) ("Title VII of the Civil Rights Act of 1964 requires employers to accommodate the religious practice of their employees unless doing so would impose an undue hardship on the conduct of the employer's business.") (internal quotation marks and citation omitted.) Similarly, the PHRA makes it unlawful for any employer to discriminate against an individual because of "religious creed." 43 P.S. § 955(a). Title VII and PHRA claims can be considered together. *See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 n.5 (3d Cir. 2006) ("[W]e construe Title VII and the PHRA consistently."); *Burgh v. Borough Council*, 251 F.3d 465, 469 (3d Cir. 2010) ("The analysis of [Title VII and PHRA] claims is identical.")

For a Title VII plaintiff to withstand a motion to dismiss, the plaintiff must plead factual allegations that make the following elements plausible: (1) he has a sincere belief that conflicts with a job requirement; (2) he told the employer about the conflict; and (3) he was disciplined for failing to comply with that conflicting requirement. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 319 (3d Cir. 2008). The only question before this Court is whether Plaintiff satisfied "the lenient" standard of review applied at the motion to dismiss stage. *See Kaite v. Altoona Student Trans., Inc.*, 296 F. Supp. 3d 736, 744 (W.D. Pa. 2017) (citation omitted). Plaintiff made the requisite threshold showing that she has plausible claims of religious discrimination.

### A.    Plaintiff States a Claim for Retaliation

It is unlawful for any employer to discriminate against an employee because the employee "has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3. Conduct that falls under the opposition clause can form the basis of a retaliation claim and is referred to as "protected activity." *See e.g. Thompson v. N. Am. Stainless, LP*, 562 U.S. 170 (2011).

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in a protected activity under Title VII; (2) the employer took an adverse action against her; and (3) there was a causal connection between

the employee's participation in the protected activity and the adverse employment action. *Wilkerson*, 522 F.3d at 320.

To sustain a claim for retaliation, it must be plausible that, but for her request for a religious exemption, Ms. Sellers would not have been written up and suspended for the day. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) ("The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."). At the prima facie stage, a plaintiff need only proffer evidence sufficient to raise the inference that his engagement in protected activity was the *likely reason* for the adverse employment action, not the but-for reason. *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 253 (3d Cir. 2017).

Defendant's argument that Plaintiff failed to state a claim of retaliation is a legal question bearing on the first element of retaliation: whether a request for a religious accommodation can constitute "opposition" for purposes of Title VII's anti-retaliation provision. As the Supreme Court discussed in *Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271 (2009), "oppose" can carry a narrow definition that would require some overt action, express communication, or direct opposition. *See id.* at 276-278. It can also encompass a broad definition that would include actions or statements that only indirectly or implicitly convey

8

opposition. *Id*. The Supreme Court in *Crawford* adopted an expansive view of the opposition clause, such that conduct or communication that reveals opposition, even implicitly, is enough. *Id*.

"EEOC has taken the position that requesting religious accommodation is protected activity." *EEOC, Compliance Manual Section 12: Religious Discrimination* § 12-V.B (2008).[1] In contrast, Defendant relies on circuit decisions outside this circuit: the Eighth Circuit's decision in *EEOC v. N. Mem. Health Care*, 908 F.3d 1098 (8th Cir. 2018), and the Sixth Circuit's decision in *Stanley v. ExpressJet Airlines, Inc.*, 808 Fed. Appx. 351 (6th Cir. 2020), for its argument that "requesting an accommodation, alone, is not 'protected activity' for purposes of a Title VII religious retaliation claim." However, Defendant misstates and misapplies the holdings in both of these cases. In *N. Mem. Health Care*, the Eighth Circuit reviewed whether an employee or job applicant's request for an accommodation can be "protected activity" under Title VII's anti-retaliation provision. Based on the specific record of the case, the Court found that the record was not sufficient to overturn the lower court's ruling in favor of the employer on summary judgment. In making its decision, the Court recognized that sometimes a request for religious accommodation clearly is "oppositional" activity, providing an example that "if an employer were so foolish or ignorant as to adopt a policy of not accommodating

---

[1] https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination.

religious practices, an employee who was fired because she objected to this unlawful policy in requesting an accommodation would have an opposition-clause retaliation claim under § 2000e-3(a)." *Id*. at 1103. The Court gave another example that "if an employee or applicant in good faith requested a religious accommodation, and if the employer denied the accommodation on the ground that it was not in fact based on a religious practice *and* fired or refused to hire the employee or applicant because she made the request, the reasoning…would support an opposition-clause retaliation claim." *Id.* But, under the facts in *N. Mem. Health Care*, the Court found that when an employee requests a religious accommodation, and the request is denied by an employer that does accommodate reasonable requests that do not cause undue hardship, then in those cases, there is no basis for an opposition-clause retaliation claim. *Id.*

The facts alleged in Plaintiff's Complaint line up with the examples given by the Eighth Circuit and not with the employee in *N. Mem. Health Care* in that Plaintiff objected to Defendant's policy allowing males to use the female locker room, explained her religious beliefs against the policy, and asked for accommodation. Furthermore, Defendant allows co-workers to cover the locker-room escort task for non-religious reasons but clearly told Plaintiff it would not allow any accommodation that was based on religious beliefs. Here, Defendant did not punish Plaintiff's May 28th action until <u>after</u> she explained her religious beliefs. If Ms.

10

Sellers had asked her supervisor or co–worker to complete the task of escorting the male into the women's locker room so she could make a phone call, complete other work tasks, or use the restroom, she would not have been punished. Also, as alleged, Defendant's denial was not for undue hardship but punitive, telling Plaintiff to "leave [her]...religious...beliefs at the door."

In the unpublished *Stanley* decision cited by Defendant, the Sixth Circuit found that because the plaintiff never identified her "protected activity," requesting an accommodation, **without more**, was not a protected act. *See Stanley*, 808 Fed. Appx. at 358. However, the Sixth Circuit later questioned *Stanley*, noting a conflict with the Third Circuit, and stating that "requesting a religious accommodation is a protected activity. And denying an accommodation request *can* be retaliatory." *Bilyeu v. UT-Battelle, LLC*, 154 F.4th 396, 405 (6th Cir. 2025). The Sixth Circuit further noted that "the case law is not particularly clear on this issue. We have said in an unpublished opinion [*Stanley*] that requesting an accommodation, without more, is not a protected act, but the Third Circuit disagreed." *Id.* at 405 n.2 (*citing Smith v. City of Atl. City*, 138 F.4th 759, 775 (3d Cir. 2025)). Defendant's counsel did not cite *Smith*.

Defendant instead cites to district court cases that denied retaliation claims for employees who "merely applied for a religious accommodation." However, these cases were all decided during the period when the question of whether a religious

accommodation request is a "protected activity" under Title VII had not yet been contemplated by the Third Circuit. *See Andres v. Takeda Pharmaceuticals America, Inc.*, 2024 U.S. Disc. LEXIS 197877, *9 (W.D. Pa. Oct. 31, 2024).

In *Smith*, the Third Circuit clearly stated that requesting an accommodation is a protected activity and thus satisfies the first element of a prima facie retaliation case. *See Smith*, 138 F.4th at 775 (*stating* "there was no genuine dispute that [employee] [had] satisfied the first element of a prima facie retaliation case because he requested an accommodation, lodged a complaint with HR in furtherance of that request, and filed [a] lawsuit. **All** are activities protected by Title VII.") (emphasis added). While the *Smith* court ultimately upheld the lower court's summary judgment dismissal of the employee's retaliation claim, it was because it found he did not meet the third element of causation and in spite of its finding that he met the first element of retaliation. After *Smith*, it is well-established in the Third Circuit that requesting an accommodation is a "protected activity." *Smith* binds this Court.

### B. Plaintiff States Claims for Religious Discrimination under Title VII Under Both Failure to Accommodate and Disparate Treatment Theories.

#### 1. Defendant's Undue Hardship Arguments Against Plaintiff's Failure to Accommodate Claims are Premature.

Under Title VII, <u>after</u> a plaintiff establishes a *prima facie* case, the burden shifts to the employer to show it either made a good-faith effort to reasonably accommodate or that reasonable accommodation would create an undue hardship

upon the employer. *See EEOC v. GEO Grp.*, 616 F.3d 265, 271 (3d Cir. 2010). An undue hardship defense requires "an employer [to] show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff v. DeJoy*, 600 U.S. 447, 470 (2023).

The undue hardship analysis, however, is premature at this point in the litigation. As previously stated, a plaintiff is not required to establish the elements of a *prima facie* case in a complaint but need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009). An evidentiary standard is not a proper measure of whether a complaint fails to state a claim. *Id. See also Ulrich v. Lancaster Gen. Health*, 2023 U.S. Dist. LEXIS 64750, at *9-10 (W.D. Pa. 2020); The undue [hardship] analysis only comes into play once the plaintiff has stated a prima facie case, and at the motion to dismiss stage, the plaintiff need only plead a plausible claim, a lower standard than a prima facie case. *Miller v. Tithonus Tyrone, L.P.*, 2020 U.S. Dist. LEXIS 75429, at *11 (W.D. Pa. April 20, 2020) (citing *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016)). *See also Ulrich*, at *16 ("whether [employer] can show that accommodating [Plaintiff]'s request to forego COVID testing would cause it undue hardship…[is an] issue which could not be resolved without the consideration of evidence beyond the pleadings, which is not available to the Court on a motion to dismiss under Fed. R.

Civ. Pr. 12(b)(6)"); *Kaite v. Altoona Student Transp., Inc.*, 296 F. Supp. 3d 736, 742 (W.D. Pa. 2017) ("whether a particular accommodation works an undue [burden] on…employer…must be made by considering 'the particular factual context of each case.' Thus, more factual development is required before determining whether accommodating Plaintiff would have placed an undue [hardship] on Defendant.") (internal citations omitted); *Rackovan v. Pa. State Univ.*, 2025 U.S. Dist. LEXIS 219445, *13 (M.D. Pa. 2025) ("As Plaintiff notes, the burden-shifting framework to determine whether an accommodation was reasonable or whether accommodation would pose an undue hardship is not yet applicable at the motion to dismiss stage.") (citations omitted). At this stage in the litigation, Plaintiff is not required to even plead, let alone prove as a matter of law, that any accommodation was not unduly burdensome. Plaintiff sufficiently stated a claim of employment discrimination under the theory of failure to accommodate, which is all that is required.

The cases Defendant cites in support of its argument that accommodating Plaintiff would have created an undue hardship as a matter of law, show that their arguments are untimely. Except for two from outside the Third Circuit, each case cited by Defendant involved litigation well past the motion to dismiss stage and all involved summary judgment decisions.

Furthermore, Defendant's premature argument that it could not accommodate Plaintiff's religious request without suffering an undue hardship is disingenuous

14

considering the fact that it already accommodated Plaintiff's request for another employee to escort a biological male to the female locker room on May 28, 2025.

### 2. Defendant's Claim That the Requested Accommodation Would be Illegal is Incorrect.

Even if this Court now examines whether the requested accommodation is reasonable, Defendant's assertion that such an accommodation would be illegal is patently false. Likewise, it is slanderous and dishonest to suggest that Ms. Sellers would refuse to serve someone because they are transgender or that her actions are akin to racial bigotry, as Defense counsel insinuated in the brief. Ms. Sellers would happily serve anyone regardless of gender identity, but she will not walk a biological male into the women's locker room.

No law requires that privacy facilities like restrooms, changing areas, or showers be opened up based on gender identity rather than sex. On the contrary, the sheer volume of laws separating privacy facilities based on sex tells a different story.[2] The reason, of course, is that forcing biological men and biological women

---

[2] *See, e.g.,* 24 P.S. § 7-740 (school privacy facilities "shall be suitably constructed for, and used separately by the sexes"); 7 Pa. Code § 1.57 (separate facilities for meat packers); 7 Pa. Code § 82.9 (separate facilities for seasonal farm workers, "distinctly marked 'for men' and 'for women' by signs printed in English and in the native languages of the persons" using those facilities); 28 Pa. Code § 18.62 ("separate dressing facilities, showers, lavatories, toilets and appurtenances for each sex" at swimming pools); 28 Pa. Code § 19.21 (separate facilities at camps); 28 Pa. Code § 205.38 (separate facilities at long term care facilities); 34 Pa. Code § 41.31 (separate facilities in the workplace "for each sex," and "no person shall be permitted to use or frequent a toilet room assigned to the opposite sex"); 34 Pa.

into the same private space where people undress creates a potentially sexually harassing environment.[3] A woman's privacy from the opposite sex belongs to her, and neither springs into existence nor ceases to exist based on the beliefs of the opposite sex.

The importance of single-sex privacy facilities has not changed as a result of *Bostock v. Clayton Cty.,* 590 U.S. 644 (2020). *Bostock* explicitly decided nothing but whether a person could bring a gender identity claim in an employment discrimination context where sex discrimination itself is already illegal; it did not address issues where sex separation is legal or required. To that end, the Court stated, *"*We do not purport to address bathrooms, locker rooms, or anything else of the kind.*" Id.* at 681.

Despite Defendant's slanderous accusation that sex-based distinctions are akin to racial bigotry, the law has long treated sex differently than race precisely because our anatomical differences matter in settings where we remove our clothes. *See, e.g., City of Phila. v. Pa. Human Relations Comm'n*, 300 A.2d 97, 103 (Pa.

---

Code § 41.32 (requiring partitions separating toilet rooms on account of sex, which shall be "soundproof"); 34 Pa. Code § 41.121 (separate facilities at railroads); 34 Pa. Code § 41.122 (forbidding any person to use a facility at a railroad assigned to the opposite sex).

[3] Exec. Order No. 14168, *Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615 (Jan. 30, 2025) (effective Jan. 20, 2025) (recognizing that "gender identity-based access to single-sex spaces . . . has harmed women").

Commw. Ct. 1973) ("To have a woman supervisor observe daily showers of the boys

. . . is to risk a permanent emotional impairment *under the guise of equality*.")

(emphasis added). We should not treat all distinctions as discrimination "under the

guise of equality." *Id. See also Tuan Anh Nguyen v. INS*, 533 U.S. 53, 73 (2001)

("To fail to acknowledge even our most basic biological differences . . . risks making

the guarantee of equal protection superficial, and so disserving it.").

To be clear, this Court is *not* being asked to rule upon the use of bathrooms or

locker rooms at MeltSpa or any other location. Instead, this Court need only

recognize that the provision of a religious accommodation to Ms. Sellers to follow

her religious conscience against ignoring biological distinctions is reasonable. It

imposes no substantial burden on Defendant for another employee to discreetly carry

out Defendant's policy. Defendant is not substantially burdened simply because it

cannot force Ms. Sellers to escort a male into the female locker room to prove her

adherence to Defendant's beliefs.

### 3.    Plaintiff States a Claim for Disparate Treatment.

Title VII prohibits what is called intentional "disparate treatment"

discrimination by declaring it unlawful for an employer to fail or refuse to hire or to

discharge any individual "because of such individual's…religion." 42 U.S.C. §

2000e-2(a)(1). The rule for disparate-treatment claims based on a failure to

accommodate a religious practice is straightforward: An employer may not make an

applicant's religious practice, confirmed or otherwise, a factor in employment decisions. *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015). The Supreme Court's decision makes it clear that Ms. Sellers is entitled to reasonable accommodation of her religious beliefs.

Ms. Sellers's Complaint adequately pled all three requirements of a prima facie case of disparate-treatment: (1) religion is a protected category under Title VII, and Plaintiff is a Christian (ECF 1 at ¶¶ 9, 27-28, 50-53, 64); (2) she was qualified for the position; and (3) she was disciplined for her actions, while other employees have been accommodated in more trivial situations, such as when they are doing another task, or need to take a call, or use the restroom (ECF 1 at ¶¶ 32, 35).

The fact that Defendant would not allow Plaintiff the same accommodation <u>because</u> of her stated religious beliefs, instead disciplining her for her action that Defendant <u>initially permitted</u>, more than meets the pleading requirements for the third element of religious discrimination under the disparate treatment theory.

Additionally, for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss. *Connelly*, 809 F.3d at 788. The *prima facie* case is a separate inquiry that generally cannot occur until after discovery. *See Makky v. Chertoff*, 541 F.3d 205, 215 (3d Cir. 2008). A *prima facie* case is an "evidentiary standard, not a pleading requirement, and hence is not a proper measure of whether a complaint fails to state a claim."

18

Should Plaintiff's case progress beyond discovery, she could ultimately prevail on her disparate treatment claim by proving that her religious beliefs or her status as a Christian was either a "motivating" or "determinative" factor in Hershey's adverse employment action against her. Therefore, at this early stage in the proceedings, it is enough for Plaintiff to allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims.

Furthermore, "Title VII does not demand mere neutrality with regard to religious practices – that they be treated no worse than other practices. Rather, it gives them favored treatment…because of such individual's 'religious observance and practice.'" *Abercrombie & Fitch*, 575 U.S. at 775 (2015).

## C.    PHRA Claims

Plaintiff agrees that when a claim is filed with the PHRC, the PHRC has exclusive jurisdiction over the PHRC claims for one year after filing. Although Plaintiff cross-filed her claims with the EEOC and PHRC on July 21, 2025, and received her right-to-sue letter from the EEOC, the PHRC still retains exclusive jurisdiction over her PHRA claims until July 21, 2026. *See* 43 Pa. C.S. § 962(c)(1); *Burgh v. Borough Council*, 251 F.3d 465, 471 (3d Cir. 2001). Plaintiff is permitted to re-file her PHRA claims after the expiration of the PHRA's one-year period. *See Evans v. Lakewood Rehab. & Healthcare Ctr.*, 2025 U.S. Dist. LEXIS 75096, *7-8 (M.D. Pa. April 21, 2025). Accordingly, Plaintiff concedes that this Court may

dismiss Plaintiff's PHRA claims (Counts IV, V, & VI), but contrary to Defendant counsel's assertion, it should be done without prejudice.

## IV.    CONCLUSION

For all of these reasons, Defendant's motion to dismiss Counts I, II, and III must be denied. In the alternative, should this Honorable Court grant Defendant's motion to dismiss, Plaintiff requests leave of Court to file an Amended Complaint as to those Counts. Counts IV, V, and VI may be dismissed without prejudice.

Respectfully submitted,

Date: <u>1/26/2026</u>           By:    <u>*/s/Andrea L. Shaw*</u>

ANDREA L. SHAW, ESQUIRE
PA Attorney I.D. No. 89333
Law Office of Andrew H. Shaw, P.C.
2011 W. Trindle Road
Carlisle, PA 17013
(717) 243-7135 (phone)
(717) 243-7872 (facsimile)

RANDALL L. WENGER, ESQUIRE
PA Attorney I.D. No. 86537
JEREMY L. SAMEK, ESQUIRE
PA Attorney I.D. No. 205060
JANICE MARTINO-GOTTSHALL, ESQUIRE
PA Attorney I.D. No. 49469
Independence Law Center
23 N. Front Street
Harrisburg, PA 17101
(717) 657-4990 (phone)
(717) 545-8107 (facsimile)

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE WORD COUNT</u>

I certify that the foregoing Brief in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint, contains 4,739 words, which does not include the cover or the tables. This brief therefore complies with the word-count limit prescribed by Local Rule 7.8(b). This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.


Date: <u>1/26/2026</u>                        <u>*/s/ Andrea L. Shaw*      </u>
                                             Andrea L. Shaw, Esquire

                                             *Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 26, 2026, a true and correct copy of the foregoing document was served electronically on the following:

Lindsey E. Snavely, Esquire
Pillar Aught LLC
4201 E. Park Circle
Harrisburg, PA 17111
lsnavely@pillaraught.com
*Attorney for Defendant*

I understand that notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system, and that parties may access this filing through the Court's system.

Date:  <u>1/26/2026</u>              <u>/s/ Andrea L. Shaw</u>
                                     Andrea L. Shaw, Esquire

                                     *Attorney for Plaintiff*