**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JERIAH SELLERS,** | : | **CIVIL ACTION NO. 1:25-CV-1979** |
| **Plaintiff** | : | **(Judge Neary)** |
| **v.** | : | |
| **HERSHEY ENTERTAINMENT & RESORT CO.,** | : | |
| **Defendant** | : | |

## MEMORANDUM

In 1964, Congress enshrined into law the existing moral duty that an employee cannot refuse to serve a customer at the Woolworth's lunch counter merely because of the customer's race. The Civil Rights Act, P.L. 88-352, 78 Stat. 241 (codified at 42 U.S.C. § 1971, *et seq*. (1964)). The Civil Rights Act not only protects people enjoying public accommodations, such as restaurants and hotels, but also the rights of employees to be free from discrimination in their place of work.

Plaintiff Jeriah Sellers seeks the protection of this Act, claiming religious discrimination at work. In making this argument, Sellers would construe the Civil Rights Act as protecting Black customers and Christian employees, but not transgender spa patrons. (Hr'g Tr. 21:22-27:17)[1]; but see Bostock v. Clayton Cnty., Georgia, 590 U.S. 644, 683 (2020). These questions get to some of the most polarizing political and social debates of the present moment. But courts are not tasked with

[1] The parties engaged in oral argument on April 28, 2026. Citations to the April 28 rough hearing transcript are abbreviated as "Hr'g Tr. ___." Pagination of the rough transcript may vary from that of the official transcript.

deciding moral or political issues. Courts are asked to analyze the law and determine whether a plaintiff has shown a plausible claim for relief. Sellers has not. Therefore, the motion to dismiss will be granted.

## I. Factual Background & Procedural History[2]

Jeriah Sellers began working at MeltSpa, the spa branch of Hershey Entertainment, as a part-time concierge in August 2023, and she continues to hold that position. (Doc. 1 ¶ 14). As a part of her job, Sellers escorts guests to either the men's or women's locker room and shows guests around the inside of the women's locker room. (Id. ¶ 15). On May 28, 2025, Sellers's supervisor informed her the spa would have a transgender guest that day. (Id. ¶ 18). The manager asked Sellers to escort the guest to the women's locker room, but Sellers was not comfortable due to her religious beliefs. (Id. ¶¶ 19-21). Without disclosing her religious conflict, Sellers informed her supervisor she was "not comfortable" with the assigned task, and the supervisor completed the task instead. (Id. ¶ 21-23). On May 31, 2025, Sellers and her supervisor met to discuss how Sellers would handle transgender guests in the

[2] The court has recited the facts from Sellers' perspective because, when ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

future. (Id. ¶ 26). Sellers disclosed her religious needs for the first time at this meeting. (Id. ¶¶ 26-28). She believed the conversation ended with a religious accommodation to not escort transgender guests in the future. (Id. ¶ 33; 17 at 2).

On June 4, 2025, Sellers met with a representative from human resources who informed her that she violated the spa's policy on transgender persons on May 28 and would receive a write-up and be suspended from her shift that day without pay. (Doc. 1 ¶¶ 36-37). Sellers had not seen the transgender policy previously. (Id. ¶ 41). The human resources representative told her, "Hershey wants you to leave your personal, religious, and political beliefs at the door." (Doc. 1 ¶ 38). Since June 4, 2025, she remains employed at MeltSpa and has not been disciplined again nor have any other known transgender guests visited the spa since May 28, 2025. (Hr'g Tr. 3:17-19, 33:5-7).

After receiving a notice of right to sue from the Equal Employment Opportunities Commission, (Doc. 1-3), Sellers filed this lawsuit alleging violations of Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act ("PHRA") for retaliation (counts 1 & 4), religious discrimination (counts 2 & 5), and failure to accommodate (counts 3 & 6). (Doc. 1). MeltSpa filed a motion to dismiss the case. (Doc. 13). The motion is fully briefed (Docs. 14, 17, 18) and ripe for disposition.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6). Federal notice and pleading rules require the complaint to provide

"the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 129-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Threadbare legal conclusions disguised as factual allegations are not sufficient for a facially plausible claim. Id. at 679.

## III. Discussion

### A. Pennsylvania Human Relations Act Claims

Sellers claims retaliation, discrimination and failure to accommodate under both Title VII and the PHRA.[3] The legal standard for these claims is the same under Title VII and the PHRA. See Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 318 (3d Cir. 2008) (citing Fogleman v. Mercy Hosp., Inc., 283 F. 3d 561, 567 (3d Cir 2002). The court will thus address the legal standard under Title VII as to each claim in turn and apply that standard to Sellers's corresponding claim under the PHRA.

### B. Retaliation

To state a claim for retaliation under Title VII, a plaintiff must prove (1) she engaged in a protected activity, (2) her employer took an adverse employment action against her, and (3) the adverse employment action is causally connected to the protected activity. Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (citing Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995)). If the plaintiff makes this showing, the defense has the burden of showing a legitimate, non-retaliatory

---

[3] Sellers cross-filed her claims with the Pennsylvania Human Rights Commission (hereinafter "PHRC") and the Equal Employment Opportunities Commission on July 21, 2025. (Doc. 1 ¶ 6). While her claims under the PHRA were not ripe as of the evidentiary hearing on April 28, 2026, it has now been more than one year since she filed her claims under the PHRA and thus her claims are ripe for disposition. See Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 471 (3d Cir. 2001) (finding that a plaintiff may bring a court action on her PHRA claim after one year has elapsed regardless of whether she has received a right to sue letter from the PHRC). The court will therefore consider the merits of her claims under the PHRA.

reason for its conduct. Smith v. City of Atl. City, 138 F.4th 759, 775 (3d Cir. 2025). (quoting Moore, 461 F. 3d at 342). The plaintiff can then show the factfinder that the defense's reason was pretextual and retaliation was the actual reason for the adverse employment action. Id.

The Third Circuit defines a protected activity to include "those who participate in certain Title VII proceedings (the 'participation clause') and those who oppose discrimination made unlawful by Title VII (the 'opposition clause')." Moore, 461 F.3d at 341 (quoting Slagle v. County of Clarion, 435 F.3d 262, 266 (3d Cir. 2006)). The Third Circuit has not yet provided specific direction as to whether the sole act of requesting a religious accommodation, absent other overt acts, is a protected activity. Recently in Smith v. City of Atlantic City, the Third Circuit found that requesting an accommodation, lodging a complaint with human relations, and filing a lawsuit—combined together—constituted a protected activity. 138 F.4th at 775. ("[H]e requested an accommodation, lodged a complaint with HR in furtherance of that request, and filed this lawsuit. *All* are activities protected by Title VII.") (emphasis added).

This court interprets the Third Circuit's language to mean that requesting an accommodation alone is not the same as taking that action in tandem with others. Id. at 776. The failure to accommodate an employee is a separate cause of action, and a plaintiff is not permitted to reclothe a failure-to-accommodate claim as a retaliation claim. Id. ("If we were to conclude that the denial of a request for accommodation alone is an adverse employment action, then that prong of the prima facie test would

be superfluous—every Title VII failure to accommodate claim would automatically end in an adverse employment action for the purpose of a retaliation claim.").

Furthermore, requesting an accommodation alone does not fit into either the participation or opposition clause. Activities encompassed under the participation clause include testifying, assisting, or participating in a Title VII investigation or proceeding. Stanley v. ExpressJet Airlines, Inc., 808 F. App'x 351, 357 (6th Cir. 2020). As to opposition, the Eight Circuit held that "merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation." Equal Emp. Opportunity Comm'n v. N. Mem'l Health Care, 908 F.3d 1098, 1102 (8th Cir. 2018). Other courts in this Circuit embraced the Eighth Circuit's approach and found requesting an accommodation alone is not a protected activity. Bushra v. Main Line Health, Inc., 709 F. Supp. 3d 164, 172-73 (E.D. Pa. 2023), aff'd on other grounds, No. 24-1117, 2025 WL 1078135 (3d Cir. Apr. 10, 2025); Andres v. Takeda Pharms. Am., Inc., No. 2:24-CV-00920-MJH, 2024 WL 4635388, at *3 (W.D. Pa. Oct. 31, 2024).

Sellers's only alleged protected activity is requesting an accommodation to not escort transgender women to the locker room. Sellers has not alleged, nor does the record support, that she participated in a Title VII or PHRA proceeding, participated in an investigation, or otherwise acted in opposition to a discriminatory practice prior to June 4, 2025. Unlike the employee in Smith, she does not allege she made an additional complaint to MeltSpa's human relations department. Therefore, Sellers

did not engage in a protected activity under either clause, and her retaliation claims (counts 1 and 4) must be dismissed.

**C. Disparate Treatment**

A plaintiff may allege two theories of religious discrimination: disparate treatment and failure to accommodate. Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265, 281 (3d Cir. 2001). To prove disparate treatment, a plaintiff must show: (1) she is a member of a protected class; (2) she was qualified for the position she sought to obtain or retain, (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. Gray v. Main Line Hosps., Inc., 717 F. Supp. 3d 437, 449 (E.D. Pa. 2024). A plaintiff shows an inference of intentional discrimination if non-members of the protected class were treated more favorably. Id. at 450. If the plaintiff establishes that, the burden shifts to the employer to show a legitimate, non-discriminatory reason for the adverse employment decision. The plaintiff can then show the proffered reason was pretextual. Abramson, 260 F.3d at 282; Gray, 717 F. Supp. 3d at 450.

Religion is a protected class under Title VII, and Sellers identifies as a Christian. Abramson, 260 F.3d at 282; (Doc. 1 ¶ 9). As Sellers has continued to work at MeltSpa, there is no doubt she is qualified for the position, and she alleges an adverse employment action in the one-day suspension. However, she fails to allege any facts that could give rise to an inference of intentional discrimination. In particular, she does not establish other, non-religious employees requested and

received accommodations to established MeltSpa policies while her request was denied.

Her only allegation of preferential treatment of non-religious employees is employees covering tasks for one another as necessary during the flow of their shift. (Doc. 1 ¶ 32). Specifically, she mentions colleagues taking over tasks when one person uses the bathroom, folds towels, or answers the phone. (Id.). However, these examples only contemplate how an accommodation could hypothetically be enacted, not instances where an accommodation had been granted, and are therefore not comparable to receiving a religious accommodation. Sellers has not alleged any facts showing an employee received an accommodation from MeltSpa to have another employee cover a task for them or was otherwise similarly situated to Sellers but had a different outcome. Because she does not allege any facts showing non-religious employees were treated more favorably, Sellers fails to state a claim for disparate treatment, and counts 2 and 5 must be dismissed.

**D. Failure to Accommodate**

To establish a claim for failure to accommodate, a plaintiff must show: "(1) she holds a sincere religious belief that conflicts with a job requirement; (2) she informed her employer of the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement." E.E.O.C. v. GEO Grp., Inc., 616 F.3d 265, 271 (3d Cir. 2010) (quoting Webb v. City of Phila, 562 F.3d 256, 259 (3d Cir. 2009)). If the plaintiff makes that showing, the burden shifts to the employer to show either (1) it made a good-faith effort to reasonably accommodate the religious belief, or (2) an accommodation

would present an undue hardship to the employer and its business. Gray, 717 F. Supp. 3d at 446.

An employee must give her employer "fair warning" that a particular employment practice will interfere with her religious beliefs. Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 319 (3d Cir. 2008) (citing Reed v. Great Lakes Cos., 330 F.3d 931, 935 (7th Cir. 2003)). Announcing one's belief in a particular religion is not sufficient to put an employer on notice that an employee may need an accommodation. Id. Crucially, informing an employer of one's religious belief and need for accommodation after the fact cannot form the basis for a failure to accommodate claim. Id.

At the motion to dismiss stage, the court "must accept as true all the factual allegations contained in the complaint." See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n. 1 (2002). Therefore, the court will consider Seller's belief that there are only two sexes and that people of the opposite sex should not share a locker room, (Doc. 1 ¶¶ 51-53), to be a sincere religious belief when ruling on the motion to dismiss. This belief conflicts with her job requirement to escort all guests who want to use the women's locker room into that facility and MeltSpa's policy on transgender persons, and so could be considered for accommodation. However, Sellers did not disclose her need for a religious accommodation to MeltSpa until after the conflict arose. (Doc. 1 ¶¶ 22-23, 27-28).

On May 28, 2025, Sellers informed her manager that she was uncomfortable escorting the guest, not that she had a conflicting religious belief, and did not perform

the requested job duty. (Id. ¶ 21-22). She did not inform her employer of her conflicting belief and desire for a religious accommodation until May 31, three days later. (Id. ¶¶ 26-30). Because Sellers did not put MeltSpa on notice of her need for accommodation until after the conflict arose, MeltSpa did not have a duty to provide an accommodation on May 28. Wilkerson, 522 F.3d at 322. MeltSpa has not had another known transgender guest since then, so Sellers has not had any further conflict. (Hr'g Tr. 3:17-19, 33:5-7). Because Sellers did not inform MeltSpa of her religious belief before it conflicted with a job requirement and has not had a conflict since informing her employer, she does not yet have a ripe claim for failure to accommodate and counts 3 and 6 are dismissed.

## III. Conclusion

The Constitution enshrines promises of religious liberty and pluralism. While differing beliefs may present challenges, it is important to remember that "[o]ut of difference can come the reinforcement of two important values. One is tolerance and the other is awareness that people who disagree over the things they hold dear really can live together in love and respect." Fred Rogers, MANY WAYS TO SAY I LOVE YOU, 107 (Grand Central Publishing, 2006). The law respects the different beliefs of the parties, but only grants relief to those who can show they were harmed under the law. Sellers has not made a plausible claim for relief on any count. As such, MeltSpa's motion to dismiss is granted without prejudice. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated: September 30, 2026